## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**MITCHELLE SEGURA,**

    **Plaintiff,**

v.                                                     **Case No: 5:15-cv-165-Oc-PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

## ORDER

Plaintiff appeals the administrative decision denying her application for Supplemental Security Income Benefits (SSI). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **AFFIRMED.**

### I. BACKGROUND

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> Plaintiff filed an application for Supplemental Security Income (SSI) on January 19, 2012 (Tr. 140-145, 151). She alleged disability beginning January 1, 2009 (Tr. 140). The Commissioner denied the applications initially and on reconsideration (Tr. 83-94, 96). After a hearing (Tr. 36-54), an administrative law judge (ALJ) found Plaintiff not disabled (Tr. 16-34). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6). The Commissioner's final decision is now subject to judicial review. See 42 U.S.C. §§ 405(g), 1383(c)(3).

(Doc. 16, p. 1-2).

At the time of her application, Plaintiff was 42 years of age. (Tr. 16, 140). Plaintiff can read and write in English, has an eighth grade education, and has some work experience as a housekeeper. (Tr. 154, 156).

Based on a review of the record, the ALJ found that Plaintiff has not engaged in substantial gainful activity since she applied for SSI. (Tr. 21). At Step Two, the ALJ found that Plaintiff had the following severe impairments: residuals from a left wrist injury, panic disorder, anxiety disorder, and obsessive-compulsive disorder. (Tr. 21). The ALJ found, however, that Plaintiff's impairments did not meet or equal any listed impairment. (Tr. 21). The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform a reduced range of light work. (Tr. 23). The ALJ found:

> The claimant can frequently climb ramps/stairs, balance, and she can perform gross manipulation with the left upper extremity. She should avoid concentrated exposure to excess vibrations and heights. She can perform simple tasks and simple instructions. She should have few workplace changes and occasional interaction with co-workers, supervisors and the public.

(Tr. 23).

Based upon this RFC, and considering the testimony of the vocational expert, the ALJ found that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including sorter/grader, office helper, and odd piece checker. (Tr. 29). Accordingly, the ALJ determined that Plaintiff is not disabled. (Tr. 29).

**II.     STANDARD OF REVIEW**

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

**III. Discussion**

Plaintiff raises the following issues on appeal: (1) whether the ALJ properly weighed the medical evidence in determining Plaintiff's RFC; (2) whether the ALJ properly evaluated Plaintiff's credibility; and (3) whether the ALJ relied on flawed vocational expert testimony.

### A.   The ALJ's Consideration of the Medical Evidence

Plaintiff first argues that the ALJ erred in failing to credit the opinions of Dr. Salazar, Plaintiff's treating psychiatrist.  Plaintiff also argues that the ALJ incorrectly found that Dr. Salazar's opinions were inconsistent with the treatment notes, and that he did not explain how other evidence supported his RFC.

As established by the record, Dr. Salazar was Plaintiff's treating psychiatrist beginning on June 26, 2012.  (Tr. 217).  On April 24, 2013, Dr. Salazar completed a psychiatric impairment questionnaire form provided as part of Plaintiff's claim.  (Tr. 224).  Therein, Dr. Salazar described Plaintiff's diagnosis as bipolar disorder, found she had a Global Assessment of Functioning (GAF) score of 40, and characterised her symptoms as mood swings.  Dr. Salazar opined Plaintiff was incapable of even low stress work, and checked the boxes on the form to indicate that she was markedly limited in <u>all</u> listed categories of adaptation, social interaction, understanding and memory.   Dr. Salazar also indicated Plaintiff was markedly limited in all areas of concentration and persistence, with the exception of being moderately limited in the ability to carry out simple one or two step instructions.  (Tr. 219-220).

The law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Further, the opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)).  Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  With good cause, an ALJ may disregard a

treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240-41.

The Defendant argues that the ALJ properly gave Dr. Salazar's opinion little weight, first noting that it was inconsistent with his own treatment notes. (Tr. 27). *See* 20 C.F. R. § 416.927 (c)(3) (allowing an ALJ to consider an opinion's supportability when weighing it). Indeed, Dr. Salzar's treatment notes do not indicate that Plaintiff was as severely limited as he indicated on the impairment questionnaire. For example, in June 2012, Dr. Salazar noted Plaintiff's history of mood swings, depression and anxiety (Tr. 226), but she answered all questions correctly on a memory screen test, had an appropriate affect, organized and appropriate thoughts, and was noted to have "high intelligence" and a good fund of general knowledge. (Tr. 227). Her recent memory was intact, although her concentration, insight and judgment were limited. (Tr. 227).

In June 2012, Plaintiff reported increases in energy, moving and thinking, concentration, interest in life, ability to make decisions and enjoy activities and improved pain. (Tr. 229). Dr. Salazar found a mental status exam was not indicated. (Tr. 229). He had similar findings in September 2012, November 2012, and April 2013. (Tr. 231, 233, 235). In August 2013, Dr. Salazar found Plaintiff had good medication compliance, self-care, sleep, "household chores," socializing and functioning at work/school. (Tr. 237).

In August 2013, Dr. Salazar conducted a comprehensive mental status examination and found Plaintiff with appropriate mood and affect, no noted issues in perception, organized thoughts with appropriate content, no evidence of delusions, average intelligence, fair memory, good insight and judgment, and full orientation to time, place and person. (Tr. 240). During another comprehensive mental status exam in November 2013, Dr. Salazar found similar results, although she had only fair medication compliance, self-care, sleep, household chores, socializing, and

functioning at work/school.  (Tr. 247).   Dr. Salazar noted similar results during another mental status exam in January 2014.   (Tr. 251).

Defendant argues that Dr. Salazar's treatment notes show that Plaintiff had problems with anxiety and depression, but that she did not have the disabling work-related limitations that Dr. Salazar included in his opinion on the impairment questionnaire.  The Court agrees.  For example, Dr. Salazar's opinion that Plaintiff was "markedly limited" in all aspects of understanding and memory (Doc. 220) is inconsistent with his treatment records noting that Plaintiff had organized thoughts, fair memory and good insight and judgment.  Likewise, Dr. Salazar's opinion that Plaintiff was markedly limited in all aspects of social interaction is inconsistent with his notes that she was appropriate in dress and speech, and had good to fair socializing and functioning at work/school.  (Tr. 248).  Due to these inconsistencies, the Court agrees that the ALJ had good cause to reject Dr. Salazar's opinion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 11th Cir. 1997).

The Court also observes that the opinions upon which Plaintiff relies consist of checked boxes within a questionnaire form.  As Defendant argues, this circumstance weighs in favor of discounting the opinions, as they are not equivalent to limitations and are absent from Dr. Salazar's examination and treatment notes.  *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("[A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").

Plaintiff also takes issue with the ALJ giving considerable weight to the opinions of non-examining psychologists, including Dr. Austin.  (Tr. 27).  The non-examining psychologists found that Plaintiff did not have a severe mental impairment, but the ALJ found otherwise.  The

ALJ had discretion to assess Plaintiff's RFC and was not required to rely on any particular medial opinion to evaluate the RFC. See 20. C.F.R. §§ 416.927 (e)(2), 416.945 (a)(3), 416.946(c).

Finally, the Court agrees that the ALJ identified evidence supporting the RFC finding, including Plaintiff's self-reported activities of daily living, social functioning, and the examination findings of Dr. Salazar and Dr. Tindall. (Tr. 22, 24-26). All of this evidence demonstrated that Plaintiff had some mental limitations, but not to the severe extent opined by Dr. Salazar. Further, the weight of authority in this Circuit is that the ALJ may devise the RFC without tying it to a particular medical opinion. *See Green v. Comm'r of Soc. Sec.*, 223 F. App'x 915, 923-24 (11th Cir. 2007).

For the reasons explained above, the Court finds that the ALJ did not err in rejecting Dr. Salazar's opinion or in evaluating the medical evidence of record.

### B. The ALJ's Consideration of Plaintiff's Complaints

Plaintiff next argues that the ALJ did not apply the correct legal standard in assessing the credibility of her subjective complaints. Plaintiff argues that the ALJ did not properly credit her hearing testimony, including her statement that she missed a lot of work due to fear and would cry due to nervousness. (Tr. 41). Plaintiff testified that certain activities cause her to have panic attacks (Tr. 43), approximately one or two times per day. (Tr. 45). Plaintiff argues that the ALJ erred in finding Plaintiff's subjective complaints not entirely credible.

When a claimant alleges he or she has disabling subjective symptoms, the ALJ must determine whether the claimant has a condition that could reasonably be expected to cause the symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). If the ALJ determines the claimant has such a condition, the ALJ will evaluate the alleged symptoms' intensity and persistence and how they limit the claimant's ability to work. *Id*. The ALJ will consider the claimant's testimony

regarding his or her symptoms, including any inconsistencies between the testimony and the other evidence. 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). An ALJ may reject a claimant's testimony of disabling symptoms as not credible if he provides "explicit and adequate reasons." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

In this case, the ALJ explicitly discussed Plaintiff's testimony and found her alleged symptoms were not fully credible. (Tr. 24). The ALJ clearly articulated his credibility finding, noting that, after careful consideration of the evidence, Plaintiff's "determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 24). This credibility finding is indeed supported by substantial evidence, including the medical evidence summarized above and Plaintiff's treatment history with Dr. Salazar. Likewise, the ALJ noted Plaintiff's demeanor during the hearing and her ability to answer questions quickly and without any evidence of a memory or concentration problem. (Tr. 24).

The Court agrees that the ALJ had explicit and adequate reasons to reject Plaintiff's testimony regarding her symptoms and limitations. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The ALJ's decision should be affirmed because substantial evidence supports the ALJ's evaluation of Plaintiff's condition and her credibility determination regarding her subjective complaints. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

### C. The ALJ's Reliance on the Vocational Expert Testimony

Finally, Plaintiff argues that the ALJ erred by relying on a response from a vocational expert to an incomplete hypothetical. Plaintiff contends that hypothetical questions to vocational experts must set out all the limitations and restrictions of the particular claimant, and that the ALJ erred by failing to include in the hypothetical all of Plaintiff's limitations, including that Plaintiff has moderate difficulties in social functioning and in concentration, persistence, or pace. (Tr. 22). Plaintiff argues that the hypothetical to the vocational expert only restricted Plaintiff to simple tasks and instructions, few (if any) workplace changes, and only occasional interactions with co-workers, supervisors, and the public. (Tr. 50).

Plaintiff's argument is unavailing, as substantial evidence supports the ALJs findings regarding Plaintiff's RFC. Further, the RFC properly includes the limitations found by the ALJ. The ALJ's RFC assessment need not mirror the opinion of any doctor, nor was he required to adopt all of the limitations the doctors assessed. *See Castle v. Colvin*, 557 F.App'x, 849, 853 (11th Cir. 2014). Here, the ALJ presented a thorough, comprehensive hypothetical to the vocational expert that specifically identified the functional limitations consistent with Plaintiff's RFC for a range of light work. (Tr. 49). The vocational expert's testimony regarding the jobs that a person with Plaintiff's RFC could perform given those limitations constituted substantial evidence upon which the ALJ could rely. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ is not required to include findings in the hypothetical that he had properly rejected as unsupported. *Crawford* v. *Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004). Plaintiff failed to prove that there were greater limitations to include in the RFC finding. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

Upon a review of the record, the Court finds that substantial evidence supports the ALJ's

findings and his conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act.

### IV. CONCLUSION

For the reasons stated above, the ALJ'S decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE** and **ORDERED** in Ocala, Florida on June 17, 2016.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties